**MUSICK, PEELER & GARRETT LLP**
624 South Grand Avenue, Suite 2000
Los Angeles, California 90017-3383
Telephone (213) 629-7600
Facsimile (213) 624-1376

Steven J. Elie (State Bar No. 130566)
  s.elie@musickpeeler.com
Karen L. Bizzini (State Bar No. 119391)
  k.bizzini@musickpeeler.com

Attorneys for Plaintiff
STATE FARM GENERAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID PHILLIPS, an individual; NKP MEDICAL MARKETING, INC., a California corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF RE DUTIES TO DEFEND AND INDEMNIFY** |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**MUSICK, PEELER & GARRETT LLP**

1310248.1

COMPLAINT FOR DECLARATORY RELIEF RE DUTIES TO DEFEND AND INDEMNIFY

Plaintiff State Farm General Insurance Company ("State Farm"), by its attorneys Musick, Peeler & Garrett LLP, alleges as follows:

## THE PARTIES

1. Plaintiff State Farm is a corporation organized and existing pursuant to the laws of the State of Illinois, with its principal place of business located at Bloomington, Illinois.

2. Upon information and belief, at all relevant times, defendant NKP Medical Marketing, Inc. ("NKP") is a domestic corporation organized and existing pursuant to the laws of the State of California, with its principal place of business located at Culver City, California.

3. Upon information and belief, defendant David J. Phillips ("Phillips") is the founder of NKP and served as its President and CEO from approximately 2006 through 2017. Upon information and belief, Phillips was formerly an inmate of a federal correctional facility in Massachusetts and is currently residing in Leominster, Massachusetts.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure.

5. An actual justiciable controversy exists within the meaning of 28 U.S.C. Section 2201 regarding whether State Farm has a duty to defend or to indemnify defendants under the State Farm Commercial General Liability Policy issued to NKP with regard to the claims asserted in the Underlying Action, as more particularly described below.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different states.

7. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 in

that a substantial part of the events giving rise to this claim occurred in this judicial district, and defendant NKP resides and regularly conducts business in this district.

## THE STATE FARM POLICY

8. State Farm issued Commercial General Liability Policy No. 92-C2-K901-0 to NKP as the named insured for the policy period of August 4, 2016 through August 4, 2017 ("the Policy"). The Policy has limits for business liability of $1,000,000 with an aggregate of $2,000,000. Defense costs are outside of limits. A copy of the Policy is attached as Exhibit A hereto. The Policy contains the following Insuring Agreement in Section II. Liability, Coverage L – Business Liability:

   1. When a Limit of Insurance is shown in the Declarations for Coverage L – Business Liability, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" with or without the insured's consent, for any reason and at any time. But:

   2. This insurance applies:

      a. To "bodily injury" and "property damage" only if:

         (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

         (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

                        *    *    *

      b. To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

9. The Policy defines an insured as follows:

   1. Except for liability arising out of the use of "non-owned

autos":

  a. If you are designated in the Declarations as:

   \* \* \*

  4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

 10. Section II. Definitions of the Policy contains the following relevant terms found in quotation marks throughout the Policy:

  3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury caused by the "bodily injury."

   \* \* \*

  6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

   \* \* \*

  17. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

  18. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   \* \* \*

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

 11. Section II of the Policy includes the following exclusions applicable to Business Liability:

 [T]his insurance does not apply to:

1. Expected Or Intended Injury

   a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

   b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured. . . .

   \* \* \*

17. Personal And Advertising Injury

   a. Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   \* \* \*

   h. Committed by an insured whose business is:

   \* \* \*

   (2) Designing or determining content of web-sites for others; or

   (3) An Internet search, access, content or service provider.

   \* \* \*

   n. Arising out of a criminal act committed by or at the direction of the insured.

## THE UNDERLYING ACTION

12. On April 11, 2019, plaintiffs Steven Fruchter ("Fruchter") and Fruchter & Co. dba GrowthMed, Inc. ("GrowthMed") filed a complaint in Los Angeles County Superior Court, Case No. 19STCV12636, against defendants David Phillips, NKP, and David Suiaunoa ("the Underlying Action"). A copy of the complaint filed in the Underlying Action is attached as Exhibit B hereto. The complaint pleads four causes of action against all defendants: (1) intentional infliction of emotional distress by Fruchter; (2) assault by Fruchter; (3) intentional interference with

prospective economic advantage by Fruchter and GrowthMed; and (4) interference with contractual relations by Fruchter and GrowthMed. Plaintiffs seek compensatory damages, punitive and exemplary damages, costs of suit and attorneys' fees.

13. The complaint alleges that Fruchter was the target of a "heinous murder-for-hire plot hatched by Phillips to eliminate a competitor." It asserts that Fruchter founded and serves as the CEO of GrowthMed, and was at all relevant times the sole owner of GrowthMed.

14. The complaint alleges that GrowthMed is in the business of providing website design and internet marketing to companies in the medical field, and that NKP is also an internet marketing agency that develops websites and markets practice growth to specialty medical practices. Plaintiffs allege that GrowthMed is a competitor of NKP and was successfully winning over clients from NKP at the time Phillips hatched the murder-for-hire scheme against Fruchter.

15. According to the complaint, Fruchter had worked for NKP as an independent contractor and left in 2014 to found GrowthMed, and that while Fruchter worked with Phillips at NKP, Phillips told Fruchter that he should never "cross" him. Plaintiffs contend that Phillips also made several references to having an enemy "taken out."

16. Plaintiffs contend that shortly after Fruchter left NKP in 2014, several members of Fruchter's family began receiving anonymous letters that contained false and defamatory statements about Fruchter, including that he was "a drug addict." Plaintiffs also allege that Phillips sent Fruchter threatening text messages.

17. The complaint asserts that in the years following Fruchter's departure from NKP, "Phillips and NKP attempted on several occasions to recruit individual GrowthMed clients." Plaintiffs contend that "[o]n at least one occasion, Phillips staked out one of Fruchter's clients and arranged a 'chance' encounter outside the client's office," and that during that encounter, "Phillips defamed Fruchter and

GrowthMed and tried to recruit the client."

18. Plaintiffs contend that these alleged acts led to several verbal altercations between Phillips and Fruchter, and that the final such altercation occurred in September 2016, when "Phillips sent a text message from his cell phone to Fruchter that ominously read, 'don't push me.'" Plaintiffs assert that after Fruchter received this text message, Fruchter ceased all direct communication or interaction with Phillips.

19. Plaintiffs further allege in the Underlying Action that to carry out the murder-for-hire scheme, Phillips recruited Suiaunoa, who was a reputed drug dealer to whom Phillips had lent $30,000 to support the establishment of a medical marijuana grow business that Suiaunoa was unable to launch. Unbeknownst to Phillips, federal agents who had been investigating Suiaunoa for drug trafficking discovered the plot, arrested Suiaunoa, and secured his cooperation.

20. Plaintiffs contend that Suiaunoa admitted to the agents that he was acting at the behest of Phillips in carrying out the murder-for-hire plot. That same day, the federal agents contacted Fruchter and advised him of the plot. The federal agents helped sequester him, staged his murder, and took fake photographs purporting to show Fruchter's beaten and bloody corpse so that Suiaunoa could show them to Phillips to convince Phillips that the murder had been successful.

21. The complaint asserts that Phillips was charged, tried and convicted of the murder-for-hire plot, sentenced to federal prison, and fined $100,000.

22. According to the complaint, although the murder plot was thwarted, Fruchter suffered and continues to suffer emotional distress as a result of defendants' actions. Plaintiffs allege that the plot significantly damaged GrowthMed's business and caused it substantial financial losses. Plaintiffs allege that the defendants conspired to carry out this deadly scheme and that each is jointly and severally liable for the trauma caused to Fruchter and for the business-related losses.

## PHILLIPS' CRIMINAL TRIAL

23. Phillips was arrested for this murder-for-hire plot on April 25, 2017, and tried by the government in the Fall of 2017. Fruchter, three Homeland Security agents, a federal informant, and an NKP and GrowthMed employee all testified at Phillips' criminal trial. Phillips did not testify at his trial.

24. On November 3, 2017, Phillips was convicted under the federal murder-for-hire statute, which makes it a crime: (1) to travel or use facilities of interstate or foreign commerce, (2) with intent that a murder in violation of State or Federal law be committed, (3) for money or other pecuniary compensation. 18 U.S.C. §1958. Phillips' conviction was upheld on appeal. Phillips was sentenced to 90 months in prison.

## STATE FARM'S DEFENSE OF PHILLIPS AND NKP
## IN THE UNDERLYING ACTION

25. Phillips tendered his defense of the Underlying Action to State Farm on September 20, 2019. State Farm accepted Phillips' tender under a full reservation of rights, and appointed defense counsel to defend Phillips.

26. NKP tendered its defense of the Underlying Action to State Farm on September 20, 2019. State Farm accepted NKP's tender under a full reservation of rights, and appointed defense counsel to defend NKP.

27. State Farm contends that it has no duty to defend and no duty to indemnify either Phillips or NKP based on the facts determined by the jury in Phillips' criminal trial, which facts will be binding on Phillips and NKP in the Underlying Action based on the legal doctrine of collateral estoppel. *McCutchen v. City of Montclair*, 87 Cal.App.4th 1138, 1144 (1999) (citations omitted). Federal and State courts have consistently held that the collateral estoppel doctrine may preclude relitigation in a civil suit of issues that were decided in a prior criminal proceeding. *See e.g., Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 58 Cal.2d 601, 605 (1962).

28. The jury in Phillips' criminal trial determined, among other things, that Phillips was the founder, President and CEO of NKP at the time he committed the intentional acts for which he was found guilty; that Phillips was motivated to kill Fruchter because Fruchter and GrowthMed were successful business competitors of NKP; that Phillips made false and defamatory statements about Fruchter and GrowthMed to GrowthMed's clients; and that Phillips made at least one of these defamatory statements during the coverage period of the Policy.

29. No coverage under the Policy is owed to either Phillips or NKP based on these judicial determinations.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Re State Farm's Duty To Defend Phillips For The Underlying Action)

30. State Farm incorporates paragraphs 1 through 29 above, as though they were fully set forth herein.

31. On November 13, 2019, State Farm accepted the tender of defense of the complaint filed in the Underlying Action made on behalf of Phillips. State Farm appointed counsel to defend Phillips in the Underlying Action.

32. State Farm has paid defense costs incurred by the counsel defending Phillips in the Underlying Action, subject to a reservation of all rights, including the right to allocate defense costs, settlements and indemnity payments between covered and non-covered claims; the right to decline to defend or to indemnify for some or all of the damages that might be awarded; and the right to decline to continue to defend if it determines that there is no coverage owed under the Policy.

33. An actual justiciable controversy exists between State Farm and Phillips about whether State Farm owes a duty to defend Phillips in the Underlying Action. State Farm believes that it has no duty to defend Phillips for the Underlying Action.

34. State Farm believes that Phillips disagrees with State Farm's position

that State Farm owes no duty to defend Phillips for the Underlying Action.

35. Accordingly, because State Farm has no duty to defend Phillips for the Underlying Action under the Policy, State Farm requests a judicial declaration that it owes no duty to continue to defend Phillips for the Underlying Action.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Re State Farm's Duty To Defend NKP For The Underlying Action)

36. State Farm incorporates paragraphs 1 through 35 above, as though they were fully set forth herein.

37. On October 9, 2019, State Farm accepted the tender of defense of the complaint filed in the Underlying Action made by NKP. State Farm appointed counsel to defend NKP in the Underlying Action.

38. State Farm has paid defense costs incurred by the counsel defending NKP in the Underlying Action, subject to a reservation of all rights, including the right to allocate defense costs, settlements and indemnity payments between covered and non-covered claims; the right to decline to defend or to indemnify for some or all of the damages that might be awarded; and the right to decline to continue to defend if it determines that there is no coverage owed under the Policy.

39. An actual justiciable controversy exists between State Farm and NKP about whether State Farm owes a duty to defend NKP in the Underlying Action. State Farm believes that it has no duty to defend NKP for the Underlying Action.

40. State Farm believes that NKP disagrees with State Farm's position that State Farm owes no duty to defend NKP for the Underlying Action.

41. Accordingly, because State Farm has no duty to defend NKP for the Underlying Action under the Policy, State Farm requests a judicial declaration that it owes no duty to continue to defend NKP for the Underlying Action.

/ / /

/ / /

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief Re State Farm's Duty To Indemnify Phillips For The Underlying Action)

42. State Farm incorporates paragraphs 1 through 41 above, as though they were fully set forth herein.

43. An actual justiciable controversy exists between State Farm and Phillips about whether State Farm owes a duty to indemnify Phillips for any settlement that is achieved or any judgment that is entered against him in the Underlying Action. State Farm believes it has no duty to indemnify Phillips for the Underlying Action.

44. State Farm believes that Phillips disagrees with State Farm's position that State Farm owes no duty to indemnify him for the Underlying Action.

45. Accordingly, because State Farm has no duty to indemnify Phillips for the Underlying Action under the Policy, State Farm requests a judicial declaration that it has no duty to indemnify Phillips for the Underlying Action.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief Re State Farm's Duty To Indemnify NKP For The Underlying Action)

46. State Farm incorporates paragraphs 1 through 45 above, as though they were fully set forth herein.

47. An actual justiciable controversy exists between State Farm and NKP about whether State Farm owes a duty to indemnify NKP for any settlement that is achieved or any judgment that is entered against it in the Underlying Action. State Farm believes it has no duty to indemnify NKP for the Underlying Action.

48. State Farm believes that NKP disagrees with State Farm's position that State Farm owes no duty to indemnify NKP for the Underlying Action.

49. Accordingly, because State Farm has no duty to indemnify NKP for the Underlying Action under the Policy, State Farm requests a judicial declaration that it

has no duty to indemnify NKP for the Underlying Action.

**PRAYER FOR RELIEF**

WHEREFORE, State Farm requests that judgment be made and entered herein as follows:

1. For a declaration and judgment that State Farm has no duty to defend Phillips in the Underlying Action;

2. For a declaration and judgment that State Farm has no duty to defend NKP in the Underlying Action;

3. For a declaration and judgment that State Farm has no duty to indemnify Phillips in the Underlying Action;

4. For a declaration and judgment that State Farm has no duty to indemnify NKP in the Underlying Action;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

Dated:  April 22, 2021                MUSICK, PEELER & GARRETT LLP

By: *Karen L. Bizzini*
Karen L. Bizzini
Attorneys for Plaintiff
STATE FARM GENERAL INSURANCE COMPANY